**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gerald E. CAIN, Evelyn P. Cain, Collin
Cain, and Janice Cain,
Defendants-Appellants.**

**No. 83–2258.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1984.

Decided June 20, 1984.

Robert L. Simpkins, Asst. U.S. Atty., Frederick J. Hess-U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

John Womick, Carbondale, Ill., for defendants-appellants.

Before ESCHBACH and POSNER, Circuit Judges, and MARSHALL, District Judge.*

PRENTICE H. MARSHALL, District Judge.

Appellee, the United States, brought this action to enforce personal guaranties on a loan in which the Small Business Administration (SBA) participated. Appellants, the guarantors of the loan, raised the affirmative defense that the SBA had breached its duty of good faith which appellants claimed was owed to them. By consent of the parties, the case was referred to a United States Magistrate pursuant to 28 U.S.C. § 636(c) (1982) to conduct all proceedings in the matter. Both parties moved for summary judgment. Rejecting appellants' good faith defense, the magistrate entered summary judgment in favor of the United States and against appellants. Whether the SBA owed appellants a duty of good faith and, if so, whether the SBA breached that duty are the issues now before this court on appeal.

■ At the time of the loan in question, appellants, Gerald, Evelyn, Collin and Janice Cain, owned stock in Custom Poly Bags, Inc., an Illinois corporation with its principal place of business in Union County, Illinois. On April 17, 1974 Anna National Bank (Anna) loaned Custom Poly Bags $175,000. Custom Poly Bags pledged its assets as security for the loan. Appellants executed personal guaranties of the loan.[1] In exchange for the SBA's guaranty of the loan, Anna assigned to the SBA the note and the rights related to the note, including appellants' guaranties and the collateral.

Later, Custom Poly Bags needed more money to continue its operations. Anna loaned it an additional $60,000. So that Custom Poly Bags could provide the security Anna demanded for the additional loan, the SBA subordinated its rights in the original collateral to Anna. The SBA did not notify appellants of the subordination.

On July 1, 1978 Custom Poly Bags sold its assets to CDI, Inc. CDI assumed Custom Poly Bags' obligations under the two loans. Both Anna and the SBA approved the sale.

In late 1980 or early 1981, Munn's Medical Supply purchased the $60,000 note from Anna. Upon default by CDI, Munn's foreclosed on the collateral and held a public sale pursuant to Ill.Rev.Stat. ch. 26, § 9–504 (1983). Munn's was the sole bidder and purchased the collateral for $60,000. Although Munn's informed the SBA of the public sale, no SBA representative attended, nor did the SBA notify appellants of the sale.

The original note for $175,000 was also in default. SBA made good on its guaranty to Anna and the United States then brought this suit against the appellant guarantors on their guaranties.

In subordinating its interest in the collateral, the SBA acted within its rights under appellants' contract of guaranty which expressly empowered the SBA, in its "uncontrolled discretion," to consent to a total release of the security without notice to appellants. The guaranty imposed no requirement on the SBA to receive collateral of the same value or nature in return for

---

* Hon. Prentice H. Marshall of the Northern District of Illinois, sitting by designation.

1. The guaranties provided, in part:
 The Undersigned [guarantor] waives any notice of the incurring by the Debtor at any time of any of the Liabilities and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the

Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:
 . . . .
 (d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by Lender.

the release. Thus, the SBA could, under the contract, release the collateral for no consideration. Clearly, the SBA's subordination of its rights to the collateral, even without notice to appellants and without collateral in exchange, was not a breach of the guaranty contract. The magistrate premised his decision to grant the United States summary judgment on the terms of the guaranty.

Appellants argue that the SBA's duty to them exceeded that provided in the contract. They assert that the SBA owed them a duty of good faith, which required the SBA to act in a commercially reasonable manner and that the SBA breached that duty by failing to notify them of the subordination, to receive an adequate exchange for the subordination, and to supervise the maintenance and sale of the collateral after the subordination.

The source of the duty of good faith, appellants suggest, is § 1–203 of the Uniform Commercial Code, enacted in Illinois as Ill.Rev.Stat. ch. 26, § 1–203 (1981). Although both parties agree that federal law governs this case, appellants argue that state law, and therefore, the Uniform Commercial Code, should provide the rule of decision. This circuit has applied the U.C.C. in determining the rights and obligations of guarantors with respect to the SBA. *United States v. Warwick*, 695 F.2d 1063 (7th Cir.1982). There the court upheld a district court determination that a sale of collateral after default was commercially reasonable.[2] Hence, we will look to state law, and therefore, the U.C.C. to determine the standard of care owed by the SBA.

Section 1–203 of the U.C.C. provides, "Every contract or duty with this act imposes an obligation of good faith in its performance or enforcement." Ill.Rev. Stat. ch. 26, § 1–203 (1981). The U.C.C. defines "good faith" as "honesty in fact in the conduct or transaction concerned." *Id.* § 1–201(19). Appellants contend that the

duty of good faith includes the requirement of commercial reasonableness. The U.C.C. definition of good faith, however, is distinct from commercial reasonableness except in the context of merchants. Article 2 of the U.C.C. which applies to sales of goods imposes upon merchants a higher standard of good faith, requiring not only honesty in fact, but "observance of reasonable commercial standards" as well. *Id.* § 2–103(b). In the present context, we do not deal with transactions in goods nor is the SBA a merchant; hence § 2–103(b) does not apply.

The cases to which appellants direct our attention, requiring the SBA to act in a commercially reasonable manner, all involve the sale of security after default. Under Article 9 of the U.C.C., which concerns secured transactions,

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

It is § 9–504, then, that imposes the commercial reasonableness standard. *See, e.g., United States v. Warwick*, 695 F.2d 1063 (7th Cir.1982); *United States v. Conrad Publishing Co.*, 589 F.2d 949 (8th Cir.1978); *United States v. Terrey*, 554 F.2d 685, 693 (5th Cir.1977); *United States v. Whitehouse Plastics*, 501 F.2d 692, 697 (5th Cir. 1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975). *See also, United States v. Sims*, 586 F.2d 580 (5th Cir.1978) (applying U.C.C. § 9–504(3) by analogy to SBA's sale of secured realty after default). *United States v. Willis*, 593 F.2d 247 (6th Cir.1979) applied the standard of commercially reasonable conduct to an SBA sale of secured property, but there the court did not expressly follow U.C.C.

---

**2.** *Warwick* made no specific reference to state law. However, the court applied the commercial reasonableness standard to a sale of secured property after·default as required by U.C.C. § 9–504. Also, the court, in discussing the stan-

dard, referred to *United States v. Conrad Publishing Co.*, 589 F.2d 949, 954 (8th Cir.1978). 695 F.2d at 1071. *Conrad Publishing* specifically applied the U.C.C. to the sale of security for an SBA loan.

§ 9–504. The duty to act in a commercially reasonable manner is imposed on the SBA only with respect to sale of security after default.

In actions on guaranties of SBA loans involving defenses other than unreasonable sale after default by the SBA, the courts have not imposed a duty of commercial reasonableness. In *United States v. Proctor*, 504 F.2d 954 (5th Cir.1974), the SBA failed to perfect its security interest in the collateral by filing a financing statement with the Secretary of State. Consequently, the IRS placed a lien on the property. The United States sued the guarantors of the loan. The court, without mentioning a duty of commercial reasonableness, held that the guarantors had waived their rights to preservation of the property in signing the SBA's standard guaranty. *See also, United States v. Flasher Co. of Texas*, 460 F.Supp. 231 (S.D.Tex.1977) (SBA's failure to perfect security interest leading to IRS lien was no defense to action on guaranty; guarantor waived rights to collateral in SBA guaranty). *United States v. Outriggers, Inc.*, 549 F.2d 337 (5th Cir.1977) involved the SBA's deletion of the name of one guarantor after the other guarantors had signed the guaranty form. The remaining guarantors argued that the deletion released them from their obligation under the guaranty. The guaranties were collateral, the court stated. The guaranty contract empowered the SBA to release the collateral. The court made no mention of a duty of commercial reasonableness with respect to the collateral, but held that the guarantors waived their rights to have the SBA maintain the collateral. In *Austad v. United States*, 386 F.2d 147 (9th Cir.1967) the SBA brought an action for foreclosure on the collateral and for a judgment against individual guarantors five years after default. The guarantors argued that the delay resulted in a reduction in the value of the collateral. Without reference to commercial reasonableness, the court stated that the language of the guaranty governed and thus rejected the guarantors' defense. *See also United States v. Beardslee*, 562 F.2d 1016 (6th Cir.1977), *cert.*

*denied*, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978) (SBA's release of primary debtor did not release guarantors; language of contract guaranty alone governed).

Because this case does not involve the sale of security after default, the magistrate correctly concluded that the standard of commercial reasonableness of § 9–504 did not apply. However, the SBA did owe a duty of simple good faith or "honesty in fact with respect to the transaction in question." Ill.Rev.Stat. ch. 26, § 1–201(19). The magistrate did not apply the general duty of good faith to the SBA. Whether the magistrate applied the correct standard of law to undisputed facts is a question of law which can be addressed by the court on appeal. *United States v. Singer Manufacturing Co.*, 374 U.S. 174, 193, 83 S.Ct. 1773, 1783, 10 L.Ed.2d 823 (1963). Because the facts here are not in dispute, we may review the magistrate's decision as a matter of law.

Even applying the good faith standard of the Uniform Commercial Code, the SBA has satisfied its duty. Had the SBA released the collateral as part of a fraudulent scheme against appellants, then the SBA would have breached its duty of good faith. The appellants, however, make no such allegation. Rather, they allege that the SBA parted with the collateral for insufficient return and then failed to supervise the care and sale of the collateral. Such conduct does not constitute a violation of the duty of honesty in fact.

Further, even if the standard of care to be applied were commercial reasonableness, the SBA in subordinating its interest acted in a commercially reasonable manner. When the SBA subordinated its interest in the security, Custom Poly Bags was in need of additional financing. Had it not received the second loan from Anna, its operations might have ceased. If the SBA had refused to subordinate its rights, it is likely that Custom Poly Bags would have failed and defaulted on the instant loan much earlier. The SBA's primary interest in its loaning activities is not to protect the

guarantors, but to assist the small businesses in their efforts to borrow money. Among the enumerated policies of the Aid to Small Business Act is "that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise...." 15 U.S.C. § 631 (1976). The SBA's primary interest, then, was not the protection of appellants, but the assurance that Custom Poly Bags could continue its operations. Given that the SBA's goal was to assist Custom Poly Bags and not to protect the guarantors, the decision to subordinate its right in the collateral was not commercially unreasonable.

Once the security interest was subordinated, the SBA could not be held responsible for supervising the care and sale of the collateral. Even if the public sale by Munn's was unreasonable, the commercially unreasonable conduct of Munn's cannot be attributed to the SBA. The SBA's obligation toward the collateral ceased when it subordinated its interest.

Because the SBA complied with both its contractual duty and any duty of good faith, the appellants were liable on their guaranties. The judgment is AFFIRMED.