**WAINWRIGHT BANK & TRUST COMPANY, Plaintiff,**

v.

**RAILROADMENS FEDERAL SAVINGS & LOAN ASSOCIATION OF INDIANAPOLIS, et al., Defendants.**

**Robert H. WILSON, Samuel L. Dowden, and Nancy C. Dowden, Defendants and Third-Party Plaintiffs-Appellants,**

v.

**The UNITED STATES SMALL BUSINESS ADMINISTRATION, Third-Party Defendant-Appellee.**

**No. 85–2680.**

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1986.

Decided Nov. 25, 1986.

Matthew H. Hobbs, Tabbert, Creamer & Capehart, Indianapolis, Ind., for defendants and third-party plaintiffs-appellants.

Gerald A. Coraz, Asst. U.S. Atty., John Daniel Tinder, U.S. Atty., Indianapolis, Ind., for third-party defendant-appellee.

Before WOOD and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Third-party plaintiffs-appellants, Robert H. Wilson and Samuel L. Dowden, seek reversal of the district court's grant of summary judgment in favor of third-party defendant-appellees, the United States Small Business Administration. We affirm.

### I.

There is no dispute as to the facts. Robert H. Wilson and Samuel L. Dowden, third-party plaintiffs-appellants ("plaintiffs" or "appellants") were the founders of the Golden Manor Corporation, an Indiana corporation financed with a $350,000 loan from Wainwright Bank & Trust Company ("Wainwright"), and the third-party defendant-appellee, the United States Small Business Administration ("SBA"). The Golden Manor Corporation loan, approved in the amount of $350,000, was secured with the appellants' personal guarantees and personal real estate mortgages on property located in Hamilton County, Indiana. Real property was purchased with the loan for the purpose of operating a restaurant named the Golden Manor.

In 1979, the restaurant owned by the appellants, after a short period in operation, encountered financial difficulties resulting in the Golden Manor Corporation becoming insolvent and defaulting on the loan. On July 7, 1979, the Automatic Sprinkler Corporation filed suit in the Hamilton (Indiana) Superior Court to collect a debt owed by the Golden Manor Corporation. The SBA, the State of Indiana, and Topics Newspaper, Inc. were named as co-defendants to answer for the claims asserted against the Golden Manor Corporation. On August 16, 1979, Wainwright assigned its interest in the mortgages and personal guarantees executed by the Golden Manor Corporation to the SBA. On November 28, 1979, the United States acting for and on behalf of the SBA, cross-claimed against the Golden Manor Corporation, the State of Indiana, and Topics Newspaper, Inc. to foreclose on the SBA's mortgage on the real estate of the Golden Manor Corporation. On April 20, 1981, the United States was awarded judgment on its cross-claim in the sum of $322,732.83 plus interest accruing to the date of judgment together with a decree of foreclosure on the mortgages.

During this same approximate time period, several events involving the property of the Golden Manor Corporation took place. On October 17, 1979, the Hamilton County Circuit Court appointed a Receiver for the Golden Manor Corporation, and approximately four months later, on February 8, 1980, gave the Receiver the authority to appraise and to proceed to attempt to sell the Golden Manor Corporation's property. The appraisal valued the real property at $420,000 and the personal property at $25,325.

The Receiver, though diligent in his efforts to locate a private buyer for the property [1] over a ten-month period, received but two offers. One was rejected as patently insufficient. The Receiver recommended approval of the other offer from Fred Spottsville, Jr., M.D. (the "Spottsville offer"). The SBA, on January 29, 1981, rejected the Spottsville offer, primarily on the basis of an inadequate debt-to-net-worth ratio of Dr. Spottsville and his personal corporation.

On April 20, 1981, the Hamilton Superior Court rendered judgment in favor of the SBA allowing them to foreclose on the property of the Golden Manor Corporation. The SBA then requested that the Sheriff of Hamilton County publish a notice of foreclosure sale in a public newspaper of general circulation (the Noblesville Daily Ledger) for three days, May 28, June 4 and June 11, 1981. Notices of the sale were also posted in three public places in Hamilton County, and at the door of the Hamilton County Courthouse in Noblesville, Indiana in compliance with the Indiana Code.

An appraisal conducted by the SBA on June 29, 1981 valued the real property of the Golden Manor Corporation at $315,000. On July 9, 1981, a public sale was held and the Sheriff of Hamilton County sold the real property at the door of the Hamilton County Courthouse, Noblesville, Indiana, to the highest bidder, the SBA, for the sum of $235,000. On October 1, 1981, the personal property of the Golden Manor Corporation likewise was sold to the highest bidder at a public auction for $8,575. [2]

On March 15, 1983, the appellants filed a third-party complaint against the SBA. The appellants alleged that the SBA breached its contractual obligation of good faith dealing in refusing to permit the assumption of the loan by Dr. Spottsville. [3] The case was removed from the Boone County Superior Court to the United States District Court for the Southern District of

---

1. As the appellants focus their arguments on appeal on the sale of the real estate, unless otherwise noted, any references to "property" means the real property.

2. The personal property was sold by an auction company.

3. The appellants also alleged that the SBA participated with Wainwright in making fraudulent misrepresentations to the appellants that induced them to execute the personal guaranties and real estate mortgages. The district court dismissed this claim on the grounds of sovereign immunity.

Indiana. The district court granted summary judgment in favor of the SBA pursuant to Fed.R.Civ.P. 56(c). *Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Assoc. of Indianapolis,* No. IP 83–417–C, Slip Op. (S.D.Ind. May 25, 1984).

The appellants appeal the grant of summary judgment to the SBA raising what amounts to one primary issue containing two subissues. The appellants argue that a genuine issue of material fact existed regarding whether the SBA's sale of the real and personal property was commercially reasonable. Whether summary judgment was properly granted depends on (1) whether there was a genuine issue of material fact concerning the commercial reasonableness of the SBA's choice of a public auction over a private sale, and (2) whether there was a genuine issue of material fact concerning the commercial reasonableness of the SBA's manner of the public sale.

## II.

A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The primary purpose of a grant of summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir. 1972).

The moving party, in making a motion for summary judgment, "has the burden of establishing the lack of a genuine issue of material fact." *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). In *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), this Court noted that to preclude summary judgment, the non-moving party must show the disputed fact to be material, that is, it must be outcome-determinative under the applicable law. Thus, facts not outcome-determinative under the applicable law, though in dispute, may still permit the entry of summary judgment.

In *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985) this Court stated:

> By entering summary judgment for a party, the district court is concluding that based on the evidence upon which the plaintiff intends to rely at trial, no reasonable jury could return a verdict for the plaintiff.... In reviewing a summary judgment, an appellate court must view the entire record and the inferences drawn therefrom in the light most favorable to the party opposing the motion.... If a study of the record reveals that inferences contrary to those drawn by the trial court might be permissible, then the summary judgment should be reversed.

(citations omitted). An appellate court should reverse a grant of summary judgment when a material fact is shown to be in dispute, however the plaintiffs must "allude to specific facts which raise a genuine issue for trial." *Linhart v. Glatfelter,* 771 F.2d 1004, 1008 (7th Cir.1985). Finally, in *Mintz v. Mathers Fund Inc.,* 463 F.2d 495, 498 (7th Cir.1972), we stated:

> Appellate courts should not look the other way to ignore the existence of the genuine issues of material facts, but neither should they strain to find the existence of such genuine issues where none exist.

The appellants argue that the district court erred in granting summary judgment because there were important factual issues in dispute concerning whether the sale by the SBA was commercially reasonable, both in the SBA's choice of a public over a private sale and in the manner of conducting the public sale.

a. The applicable rule of decision is based on Indiana law.

 Unless there is some overriding federal interest in uniformity, the applicable state law provides the rule of decision. *See United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). This court has applied the Uniform Commercial

Code ("U.C.C.") in determining the rights and obligations of guarantors with respect to the SBA. *See United States v. Cain*, 736 F.2d 1195 (7th Cir.1984); *United States v. Warwick*, 695 F.2d 1063 (7th Cir.1982). Because the State of Indiana has adopted the U.C.C., it controls our disposition of this issue.[4] Since commercial reasonableness is a question of fact,[5] we may overturn the district court's findings of fact only if they are "clearly erroneous." *See* Fed.R.Civ.P. 52(a); *Warwick*, 695 F.2d at 1071.[6]

### III.

■ The appellants argue that a genuine issue of material fact existed regarding the SBA's choice of holding a public auction rather than a private sale. In particular, they argue the SBA's rejection of the Spottsville offer was commercially unreasonable. Sec. 26-1-9-504(3) of the Indiana Code (regarding a secured party's right to dispose of collateral after default) provides:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place on any terms, but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

In deciding whether the SBA acted commercially reasonable both in choosing a public over a private sale and in the manner of the public sale, we are required to consider the aggregate of the circumstances. *C.I.T. Corp. v. Lee Pontiac, Inc.*, 513 F.2d 207, 210 (9th Cir.1975).

The appellants do not contest the fact that the Receiver made a diligent effort for some ten months to sell the property to a private buyer. Only two offers were received—Dr. Spottsville's being the only one of any possible merit.[7] Although the Receiver approved the Spottsville offer, the SBA determined that it was unacceptable from a commercial business point of view.

■ The appellants argue that in rejecting the Spottsville offer, the SBA acted commercially unreasonably. The appellants emphasize several aspects of the Spottsville offer that if, analyzed individually, would cast the offer in a favorable light: (1) the offer ($415,000) was near the appraised value of the real property ($420,000); (2) the offer was made by a young,

4. The appellants claim that the SBA's standard of care is good faith and commercial reasonableness. A similar argument was addressed in *United States v. Cain*, 736 F.2d 1195 (7th Cir. 1985) based on Illinois law. The U.C.C. defines "good faith" as "honesty in fact in the conduct or transaction concerned." U.C.C. § 1–201(19). Except in the context of merchants, the U.C.C. definition of good faith is distinct from that of commercial reasonableness. In *Cain*, 736 F.2d at 1197, we noted that "Article 2 of the U.C.C. which applies to the sale of goods imposes a higher standard of good faith, requiring not only honesty in fact, but 'observance of reasonable commercial standards' as well." (citation omitted). In *Cain* and in the present case, there was neither a transaction in goods nor is the SBA a merchant.

5. The appellants argue that the issue of commercial reasonableness is a fact issue not amenable to summary judgment citing two Indiana cases as support. *Hall v. Owen County State Bank*, 175 Ind.App. 150, 370 N.E.2d 918 (1977); *McEntire v. Indiana National Bank*, 471 N.E.2d 1216 (Ind.Ct.App.1984). *Hall* simply holds that whether a sale was held in a commercially reasonable manner is a question of fact. 370 N.E.2d at 929. Appellants argue that *McEntire* takes this a step further, 471 N.E.2d at 1226, and says that commercial reasonableness should not be handled on a motion for summary judgment. We think a more realistic reading of *McEntire* is that the court felt that there were still material issues of fact present rendering a grant of summary judgment inappropriate.

6. A factual finding is not "clearly erroneous" if "plausible in light of the record viewed in its entirety," even if the reviewing court "would have weighed the evidence differently" and arrived at a contrary conclusion. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). If, after reviewing the evidence the appellate court " 'is left with the definite and firm conviction that a mistake has been committed' " it should overturn a district court's finding of fact. *Id.* at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

7. The first offer was at a figure substantially less than the appraised value and was rejected.

practicing physician and cardiologist with an existing medical practice presumably with his best income producing years ahead of him; (3) the offer was substantially higher than the other firm offers received by the Receiver;[8] and (4) the offer would have avoided a forced liquidation sale.[9]

Despite the fact that there may have been some merit to Dr. Spottsville's offer, the SBA's decision to reject Dr. Spottsville's offer was a sound financial business decision and commercially reasonable in view of the myriad of questionable factors surrounding the offer. The district court found that the SBA relied upon the following facts in deciding not to accept the Spottsville offer: the doctor's total net worth at the time of the offer was $9,503; he had only $3,500 in cash on hand or in the bank, an amount that was far short of the $41,251.31 needed to close; the doctor apparently had no stocks, bonds or real property which could be pledged as collateral and whatever life insurance he had was previously pledged to secure a prior loan; the doctor's yearly income was $43,000 but his annual obligations were over $18,500; and the offer was contingent upon the assumption of the SBA loan (approximately $374,000) and the securing of additional financing in the amount of $360,000. *Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Assoc. of Indianapolis*, No. IP 83–417–C, Slip Op. at 4–5 (S.D.Ind. May 25, 1984).

Based on what it deemed to be sound lending practices, the SBA properly refused to consent to the sale to Dr. Spottsville as it considered him an unsatisfactory credit risk at that particular time placing special emphasis on the doctor's debt-to-

net-worth ratio of 9 to 1, and the 4.7 to 1 ratio for the doctor's personal corporation. The district court found the SBA's rejection of the Spottsville offer appropriate: "The financial condition of the offeror renders ludicrous third-party plaintiff's claim that the SBA was unreasonable in rejecting the offer to purchase the property." *Id.* at 5.

We agree with the district court's finding that Dr. Spottsville's offer lacked a proper financial foundation. Although the doctor was a relatively young man who could reasonably be expected to have significant earning potential in the future, his financial resources were clearly inadequate to assume a loan of the size in issue at the time he made the offer (approximately $374,000): his net worth was a mere $9,503; he had only $3,500 readily at hand—far short of the $41,251.31 needed to close; and his yearly income was $43,000 which was partially offset by the sum of $18,500 in annual obligations. In addition, the doctor's ability to secure the necessary additional $360,000 in financing even with prior SBA approval was, in our opinion, based on pure speculation. We hold the action of the SBA in proceeding with a public auction was both commercially reasonable and proper.

## IV.

■ The appellants also argue that a genuine issue of material fact exists regarding whether the manner of public sale was commercially unreasonable. The disposition of collateral "including the method, manner, time, place and terms must be commercially reasonable." I.C. 26–1–9–504(3).

---

8. This argument rings somewhat hollow since the one and only other private offer was rejected outright.

9. The appellants raise other issues in an attempt to create a genuine issue of material fact which warrant only limited discussion. The appellants attach significance to the fact that the SBA neither called Dr. Spottsville's legal representative for further information nor inquired about additional financing believed to be potentially available from a California firm. The record indicates that the SBA had more than sufficient

information to assess Dr. Spottsville's offer and that further inquiry was unnecessary.

The appellants intimate that there is strength in numbers when it comes to attaching documents in favor of or in opposition to a motion for summary judgment. The appellants attached 19 documents opposing the motion for summary judgment. The appellees offered only three in favor. Needless to say, the number of documents is not a dispositive factor in determining whether a grant of summary judgment is proper.

The appellants argue that the forced public sale by the SBA was marred by several deficiencies: the SBA knew of the specialized nature of the property, yet made no attempt to reach the best market available to sell the property; the advertising of the sale was limited to a very narrow market (Hamilton County, Indiana) and to the minimum required by statute; the SBA made no attempt to seek out potential buyers of restaurants; a professional auctioneer was not retained to sell the real property; the sale of the real property was held at the door of the Hamilton County Courthouse rather than at the site of the real property, thereby depriving potential buyers of the opportunity to view it at the time of sale; and, lastly, the actual price was substantially below the appraised value. The cases cited by the appellants in support of their argument that the manner of public sale was commercially unreasonable are distinguishable. In *United States v. Willis*, 593 F.2d 247 (6th Cir.1979), as opposed to the situation in the present case, the government held a public auction despite the existence of two outstanding firm offers to buy the property on sale for five times the price realized on the public sale. In *United States v. Conrad Publishing Co.*, 589 F.2d 949 (8th Cir.1978), the public sale involved specialized printing equipment while in the present facts the sale of real property predominated.[10] *Connex Press, Inc. v. International Airmotive, Inc.*, 436 F.Supp. 51 (D.D.C.1977), *aff'd without opinion*, 574 F.2d 636 (D.C.Cir. 1978) is similarly distinguishable. In *Connex Press*, the foreclosed property was a luxury airplane purchased by the secured party, a dealer in aircraft.

The district court, in its August 30, 1985 memorandum opinion responding to the appellants' motion to alter or amend its grant of summary judgment, stated:

"The third-party plaintiffs also contend that the public sale that was held was commercially unreasonable because of the manner in which it was conducted. However, it is undisputed that notice of the sale of the real estate at issue was published in the Noblesville Daily Ledger (a public newspaper of general circulation in the county of the real estate's situs) once each week for three consecutive weeks, well in advance of the sale. Notices of the sale were also posted in three public places in Hamilton County plus at the door of the Hamilton County Courthouse in Noblesville. The real estate was then sold, in the traditional manner, to the highest bidder by the Hamilton County Sheriff on the County Courthouse steps of the county in which the real estate is located. Additionally, the personal property was sold at a well advertised auction."

*Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Assoc. of Indianapolis*, No. IP 83–417–C, Slip Op. at 4 (S.D.Ind. Aug. 30, 1985).

We strongly agree with the district court's conclusion that the manner of public sale was clearly commercially reasonable. The SBA completely complied with what was required by Indiana law, I.C. 32–8–16–1.[11] Notice of the sale was published in the Noblesville Daily Ledger for three weeks, well before the sale. Notice was posted as required in three public places in Hamilton County and on the door of the Hamilton County Courthouse. The decision to pursue the public sale came only

---

**10.** The appellants argue that the property was specialized (the restaurant and restaurant equipment), but it is of some interest that Dr. Spottsville intended to convert the property into a medical clinic.

**11.** I.C. 32–8–16–1 requires that in advertising the public sale:

(d) [t]he sheriff shall advertise ... once each week for three [3] successive weeks in a daily or weekly newspaper of general circulation

printed in the English language and published in the county where the real estate is situated. The first publication shall be made at least thirty [30] days before the date of sale.

\*　\*　\*　\*　\*　\*

(e) The sheriff also shall post written or printed notices thereof in at least three [3] public places in the township in which the real estate is situated and at the door of the courthouse of the county.

after ten months of efforts by the Receiver to arrange for a private sale. The eventual price paid by the SBA for the real property was approximately 75% of the SBA's appraisal value. In sum, in viewing the aggregate set of circumstances, the appellants' arguments fail to convince us that the district court's finding that the manner of sale was commercially reasonable is clearly erroneous.[12]

## V.

After a review of the record and each of the appellants' arguments regarding the commercial unreasonableness of the choice of a public over a private sale and the manner of the public sale, we hold that the district court's decision in granting summary judgment was proper. Affirmed.

**12.** Appellees raise for the first time on appeal that the appellants waived their right to a commercially reasonable sale in the guaranties signed by them. We have held on numerous occasions that we will not consider issues that were not argued before the district court. *See, e.g., Christmas v. Sanders,* 759 F.2d 1284, 1291 (7th Cir.1985).