**ANNA READY MIX, INC.,**
**Plaintiff/Counter-defendant,**

v.

**N.E. PIERSON CONSTRUCTION CO., INC., Defendant/Counter-plaintiff.**

**Civ. No. 88–4066.**

United States District Court,
S.D. Illinois,
Benton Division.

Oct. 16, 1990.

John P. Womick, R. Courtney Hughes, Carbondale, Ill., Larry E. Hepler, Burroughs, Simpson, Hepler, Broom & MacDonald, Edwardsville, Ill., for plaintiff/counter-defendant.

Paul G. Schoen, Rebecca Whittington, Jill E. Adams, Feirich, Schoen, Mager, Green & Associates, Carbondale, Ill., for defendant/counter-plaintiff.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

On July 23, 1983, Pierson Construction Company, Inc. (Pierson) and Anna Ready Mix, Inc. (ARM) entered into an agreement for the purchase of concrete. Pursuant to the agreement, ARM was to provide concrete for use by Pierson in constructing grain silos at two sites in Mound City, Illinois. The agreement specified that the concrete, unless otherwise agreed, would have a strength of 3,000 pounds per square inch (p.s.i.) twenty-eight days after being poured and that the concrete was to contain at least 5½ sacks of cement per cubic yard of concrete. Because of cold weather at the time of construction, this requirement was increased to 6 sacks of cement per cubic yard of concrete.

On December 8, 1983, because of a scale malfunction at ARM, the regular scale was removed for repairs and replaced with a temporary electronic scale. On the afternoon of January 6, 1984, ARM determined that the electronic scale was providing inaccurate readouts. Due to the inaccuracy of the scales, the concrete delivered by ARM did not meet the required strength specification. As a result, Pierson was obliged to make various repairs to the silos.

The parties then began this wrangling litigation. ARM sued Pierson for breach of contract; Pierson counterclaimed for breach of warranty. ARM attempted to bring in a variety of third-party defendants; these claims were dismissed. Related litigation was being conducted in state courts.

Currently before the Court are two motions for summary judgment. Pierson has moved this Court for summary judgment in its favor on the issue of liability for breach of warranty. ARM has moved for summary judgment in its favor on the issue of consequential damages. Magistrate Philip Frazier has issued his recommendations. (Documents 182 and 183). The parties have filed numerous objections, responses to objections, and other related pleadings directed towards the Magistrate's reports. This Court must review the Magistrate's reports and make a *de novo* determination. 28 U.S.C. § 636(b)(1).

### I.

A Court may grant summary judgment only if the party seeking summary judgment demonstrates that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 841

F.2d 1347, 1354 (7th Cir.1988), petition for cert. dismissed 487 U.S. 1244, 109 S.Ct. 1, 101 L.Ed.2d 953 (1988). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988). Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party fails to respond to the motion. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1222 (7th Cir.1984).

When the parties do not dispute the factual basis of a motion for summary judgment, the court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dept. of Air Force,* 804 F.2d 428, 430 (7th Cir.1986), cert. denied, —— U.S. ——, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990).

When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States,* 803 F.2d 1421, 1428 (7th Cir.1986), or upon conclusory allegations in affidavits. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir.1985). The Court must view the evidence and any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Elecs. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588–89, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986), as long as the inferences are reasonable. *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988). The non-moving party must show that the disputed fact is material; that is, it must be outcome-determinative under the applicable law. *Wainwright Bank & Trust Co. v. Railroadmens Fed.* *Sav. & Loan Ass'n,* 806 F.2d 146, 149 (7th Cir.1986).

## II.

■ Pierson has filed a motion for summary judgment in its favor on Counts I, II, III and IV of its counterclaim against ARM. Pierson argues, in essence, that there is no genuine dispute that the concrete supplied by ARM contained less than 6 bags of cement per cubic yard. Since the contract called for concrete containing 5½ sacks of cement per cubic yard, later increased to 6 sacks per cubic yard, ARM breached its contract.

Magistrate Frazier recommends that Pierson's motion be denied. In his recommendation, Magistrate Frazier notes several disputed questions of fact, any of which would preclude summary judgment. For example, there is a question of whether concrete mixed with as few as 3 bags of cement per cubic yard could reach the desired strength of 3,000 p.s.i. Another disputed question of fact is the effect of cold weather at the construction site. Cold weather, apparently, can cause concrete to weaken. The parties dispute whether the weakened condition of the concrete was due to cold weather and whose responsibility it was to protect the concrete from the cold. There is also a dispute whether Pierson knowingly accepted the concrete knowing that it contained less than 6 sacks of cement per cubic yard.

In its objection to the Magistrate's report, Pierson emphasizes that Magistrate Frazier wrote that "[t]echnically, ARM probably did breach the contract when less than 5½ sacks per cubic yard concrete was delivered to the job site." Magistrate's Report and Recommendation at 2 (April 6, 1990) (Document 183). Pierson insists that since Magistrate Frazier found that the concrete contained less than six sacks of cement per cubic yard, this necessarily shows that ARM breached its contract. Therefore, Pierson argues, summary judgment should issue in Pierson's favor with regard to ARM's liability on the counterclaims.

■ Even if this Court were to find that the concrete delivered to the job site by ARM contained less than 6 sacks of cement per cubic yard, it would not be able to grant summary judgment on the issue of liability in Pierson's favor. A breach of a technical requirement of a contract does not necessarily imply a breach of warranty. Moreover, ARM has raised several affirmative defenses relating to the issue of acceptance. *See* Ill.Rev.Stat. ch. 26, ¶ 2–606. These defenses, if proved, may result in a finding of no damages for the breach of the contract and warranty[1]. There exist genuine factual disputes over these defenses. Therefore, summary judgment on the issue of ARM's liability is DENIED.

### III.

ARM has also moved for summary judgment on the issue of consequential damages. Magistrate Frazier recommended that summary judgment be granted in ARM's favor on this issue. Pierson has objected. The main grounds for Pierson's objection is that the existence of a provision in the contract requiring ARM to purchase $1,500,000 of insurance creates a genuine issue of fact whether the parties reasonably foresaw that ARM would be liable for consequential damages up to $1.5 million. This argument was never raised in front of Magistrate Frazier; thus, ARM has filed a motion to strike these arguments.

### A.

The United States Magistrate Act, 28 U.S.C. §§ 631 et seq., was passed to help district courts deal with an ever increasing workload. Among its provisions is one allowing district judges to designate magistrates to conduct hearings, including evidentiary hearings, and to submit to the judge proposed findings of facts recommendations for the disposition of a pretrial motion. 28 U.S.C. § 636(b)(1). After a magistrate issues his recommendation, the parties have ten days in which to file objections to the recommendations. *Id.* If objections are properly filed, the district judge must make a de novo determination of those portions of the report which are objected to. *Id; Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986).

Congress extended this provision to include pretrial dispositive motions in 1976. Pub.L. 94–577, 90 Stat. 2729. Magistrates were given this authority in order to allow district court judges to spend more of their time on the adjudication of a case at trial. H.R.Rep. 1609, 94th Cong.2d Sess. 7, *reprinted in* 1976 U.S.Code Cong. and Ad. News 6162, 6167.

Congress explained the requirements for a *de novo* determination:

> The use of the words *"de novo"* determination is not intended to require the judge to actually conduct a new hearing on contested issues. Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate. In some specific instances, however, it may be necessary for the judge to modify or reject the findings of the magistrate, to take additional evidence, recall witnesses, or recommit the matter to the magistrate for further proceedings.

H.R.Rep. 1609, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.Code Cong. and Ad. News at 6163.

■ Under this form of de novo review, a district judge must first look to the record developed before the magistrate. If the record is inadequate, the judge may modify the findings, take additional evidence, or recommit the matter to the magistrate. The objections filed by the parties should clarify those areas of a magistrate's report which are in dispute. In order for *de novo* review to be effective, a full record must be developed before the magistrate. Therefore, it appears that Congress

---

1. Pierson has filed a motion to strike these affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). Since these defenses affect the likelihood and measure of damages, that motion is denied.

intended that the magistrate be the first to hear all arguments and take all evidence.

Further, the proper functioning of the magistrate system requires that, absent compelling reasons, the magistrate hear all arguments the parties wish to make. As one commentator has noted,

> [c]ommon sense and efficient judicial administration dictate that a party should not be encouraged to make a partial presentation before the magistrate on a major motion, and then make another attempt entirely when the district judge reviews objections to an adverse recommendation issued by a magistrate.

7 J. Moore, *Moore's Federal Practice* ¶ 72.04 [10.–2] at 72–71. *Accord Greenshaw v. Secretary of Health and Human Services*, 863 F.2d 633, 638 (9th Cir.1988).

The First Circuit has stated the proposition succinctly:

> At most, the party aggrieved [by an adverse finding] is entitled to a review of the bidding rather than a new deal. [Federal Rule of Civil Procedure 72(b)] does not permit a litigant to present new initiatives to the district judge. We hold categorically that an unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never reasonably raised before the magistrate.

*Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–991 (1st Cir.1988).

■ Despite these concerns, Pierson argues that the failure to consider all arguments in its objection violates Pierson's right to judicial review by an officer appointed under Article III of the United States Constitution. The Court disagrees. By requiring district judges to make a *de novo* determination of those portions of a magistrate's report to which there are objections, Congress did not delegate a judicial function in violation of Article III. *United States v. Raddatz*, 447 U.S. 667, 681–683, 100 S.Ct. 2406, 2415–2416, 65 L.Ed.2d 424 (1980). Requiring the parties to raise all their arguments before the magistrate does not impede a *de novo* determination; in fact, such an "exhaustion"

requirement facilitates *de novo* review. Therefore, the requirement that, absent compelling reasons, all arguments be raised before the magistrate in the first instance does not violate Article III.

■ A review of the legislative history of the 1976 amendments to the United States Magistrate Act, applicable precedent, and the views of commentators convinces this Court that arguments raised for the first time in objections to a magistrate's report ought to be disregarded absent compelling reasons. Pierson has presented no reason why these arguments could not have been raised before Magistrate Frazier. Nor does Magistrate Frazier's report and recommendation in any manner mention the contractual provision requiring insurance coverage in the amount of $1.5 million. Therefore, the Court will disregard the arguments raised by Pierson for the first time in its objections.

■ While the Court agrees with ARM that it should not consider arguments not raised before Magistrate Frazier, a motion to strike these arguments is inappropriate. The new arguments were made in Pierson's fairly lengthy objection to Magistrate Frazier's report and recommendation. This objection is more like a memorandum of law than a pleading. Therefore, Federal Rule of Civil Procedure 12(f) does not authorize this Court to strike those arguments. *See Board of Education of Evanston, etc. v. Admiral Heating and Ventilation, Inc.*, 94 F.R.D. 300, 303–304 (N.D.Ill.1982).

### B.

■ In addition to the arguments based on the insurance coverage purchased by ARM, Pierson raises several other objections to Magistrate Frazier's recommendation that summary judgment be granted on the issue of consequential damages.

As Magistrate Frazier correctly noted, the Uniform Commercial Code (UCC), as adopted by the Illinois General Assembly, governs this diversity action. Ill.Rev.Stat. ch. 26, ¶¶ 1–101 et seq. The UCC allows the recovery of incidental and consequential damages in a proper case. Ill.Rev.Stat.

ch. 26, ¶ 2–714. Incidental damages are those damages resulting from the seller's breach and include expenses reasonably incurred in the receipt of the defective goods and in effecting cover. Ill.Rev.Stat. ch. 26, ¶ 2–715(1). Consequential damages those losses incurred as a result of general or specific requirements and needs of which the seller at the time of contracting had reason to know and which could not have reasonably been prevented. Ill.Rev.Stat. ch. 26, ¶ 2–715(2)(a).

Most of the law regarding consequential damages can be traced to the venerable English case of *Hadley v. Baxendale*, 156 Eng.Rep. 145 (Ex. 1854). *See* 1 J. White and R. Summers, *Uniform Commercial Code* § 10–4 at 514 (3d ed. 1988). The plaintiff in *Hadley* was a mill owner. Plaintiff's employee brought a shaft, which was vital to the operation of the mill, to the defendant, a carrier. The defendant was to deliver the shaft to the manufacturer, who would use it as a model for producing a replacement. The defendant was tardy in delivering the shaft, and plaintiff sued. Among the damages the plaintiff sought were the profits lost as a result of the extended incapacity of the mill.

> The court denied these damages, stating Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the both parties, at the time they made the contract, as the probable result of the breach of it.

*Hadley*, 156 Eng.Rep. at 151.

In adopting the *Hadley v. Baxendale* rule, the UCC focused on the types of damages that may reasonably have been foreseen by the parties. *See* 1 J. White and R. Summers *The Uniform Commercial Code* § 10–4 at 516 (3d ed. 1988). The "tacit agreement" test, allowing recovery of only those damages the defendant consciously assumed or could reasonably be supposed to have assumed, was specifically rejected in the comments to the UCC. Uniform Commercial Code § 2–715, Official Comment 2. Thus, the touchstone for recoverability of consequential damages is foreseeability [2].

In this case, a distinction needs to be made between consequential and incidental damages. Pierson may, if it proves the allegations in its counterclaim, recover certain incidental damages. Ill.Rev.Stat. ch. 26, ¶ 2–715(1). These damages would include such items as the cost of repairing the silo, the cost of testing the strength of the concrete, and any additional labor costs attributable to the delay. ARM's motion is not directed towards these items. It is directed toward Pierson's claim of lost profits on other construction contracts and related items.

The damages Pierson claims for lost profits on other jobs are not recoverable in this case. Pierson alleges that the money it expended in curing ARM's breach was unavailable as working capital for other jobs. Thus, Pierson was unable to secure performance bond necessary to bid on construction projects, or was required to give substantial concessions in order to induce bidders to waive a performance bond. Pierson claims it is entitled to the profit it would have received on these jobs.[3]

Under these circumstances, Pierson cannot recover the profits of the Bergman project as a matter of law. Without detailed knowledge of Pierson's financial situation, ARM would have no reason to foresee that a breach of its contract with Pier-

---

2. Magistrate Frazier wrote that "[i]n a nutshell, *Hadley v. Baxendale* teaches that a party to a contract who bites off more than he can chew should only have to choke on what he has put into his mouth." Magistrate's Report and Recommendation at 3 (April 6, 1990) (Document 183).

3. Pierson lists these jobs in its answer to an interrogatory propounded by ARM, which is attached as Exhibit 16 to ARM's motion for partial summary judgment (Document 157). This memorandum applies to all the jobs listed in that answer.

son would cause Pierson to become so thinly capitalized that it could not obtain a performance bond. *Cf. Chrysler Corp. v. E. Shavitz & Sons,* 536 F.2d 743 (7th Cir. 1976).

Indeed, allowing recovery of these lost profits would create undesirable consequences. Suppliers, such as ARM, would be loathe to contract with financially unsound companies, for fear of being subjected to rather large liability for lost profits. In order to avoid excessive liability, these suppliers would insist on conducting extensive investigations into the financial circumstances of its customers. Certainly Pierson, outside of the context of this litigation, would object to subjecting itself to this kind of intrusive scrutiny. *See Rardin v. T & D Machine Handling, Inc.,* 890 F.2d 24, 26 (7th Cir.1989) (claim based on tort).

Therefore, summary judgment should issue in ARM's favor on the damages claimed as a result of profits lost on other jobs.

Pierson is also attempting to recover damages caused by the distress sale of land and equipment below market value. These distress sales were presumably caused by Pierson's weakened financial condition. For the same reasons that Pierson cannot recover for lost profits on other jobs, it cannot recover for losses caused by the distress sales.

## SUMMARY

Pierson's motion for summary judgment on the issue of ARM's liability for breach of contract and warranty (Document 150) is DENIED. ARM's motion for partial summary judgment on the issue of consequential damages (Document 157) is GRANTED. ARM's motion to strike new arguments (Document 192) is DENIED. Pierson's motion to strike affirmative defenses (Document 191) is DENIED.

IT IS SO ORDERED.