UNITED STATES of America,
Plaintiff,

v.

CITY OF ROCK ISLAND, ILLINOIS,
et al, Defendants.

No. 00–4076.

United States District Court,
C.D. Illinois.

April 23, 2001.

Gerard A Brost, U.S. Atty, Peoria, IL, Kevin C Chow, U S Environmental Protection Agency, Office of Regional Counsel, Chicago, IL, for USA.

Roy M Harsch, Roberta M Saielli, Mark A Latham, Gardner Carton & Douglas, Chicago, IL, John P Konecky, Konecky Koenig Kutsunis & Weng, Rock Island, IL, for City of Rock Island.

Thomas E Davis, Matthew J Dunn, Asst Atty Gen, Springfield, IL, for State of Illinois.

## ORDER

MCDADE, Chief Judge.

Before the Court is Magistrate Judge Gorman's Report & Recommendation [Doc. # 13], which addresses Defendant City of Rock Island's Motion to Dismiss [Doc. # 7]. Magistrate Judge Gorman recommends that the Court deny Defendant's motion. Defendant has filed its objections and Plaintiff has responded. Having considered the Report and Defendant's objections, the Court ADOPTS Magistrate Judge Gorman's Recommendation.

## BACKGROUND

Plaintiff has brought this cause of action against the City of Rock Island for the City's discharge of pollutants into the Mississippi River from its publicly owned treatment works and wastewater collection system in violation of the Clean Water Act ("the Act"), 33 U.S.C. § 1301, *et seq.* Plaintiff alleges: (1) from 1995 to 1999, Rock Island exceeded its permit limitations for the discharge of total suspended solids; (2) Rock Island has discharged untreated effluent in violation of its permit, which requires that all discharges comply with 35 Ill. Admin. Code 302.203;[1] and (3) in violation of its permit, Rock Island has discharged untreated wastewater from its combined sewers prior to receiving its "maximum practical flow" of 12 mgd.

The Clean Water Act includes provisions for States to enforce their own pollution control and permit programs, the National Pollutant Discharge Elimination System. *See* 33 U.S.C. § 1342. Pursuant to the Act, the United States Environmental Protection Agency ("EPA") has authorized the State of Illinois to administer pollution permits. In 1977, the EPA and Illinois entered into the "National Pollutant Discharge Elimination System Memorandum of Agreement Between the Illinois Environmental Protection Agency [ ("IEPA") ] and the United States Environmental Protection Agency Region V" ("Memorandum of Agreement"), which defines the EPA's and the IEPA's respective roles in Illinois' permit program.

As pointed out by Magistrate Judge Gorman, Illinois has been working with Rock Island to remedy various alleged violations of pollution control regulations. However, the United States has now stepped into the dispute bringing this civil action for what Rock Island claims are the same violations that the State has been pursing. Rock Island filed a motion to dismiss arguing that the provisions of the Clean Water Act when taken together with the Memorandum of Agreement show that the EPA agreed to limit its enforcement authority by bringing enforcement actions only where the State was not itself enforcing permit violations. Rock Island argues that because the EPA voluntarily delegated its authority to administer the permit program to the IEPA, including enforcement, the EPA cannot maintain this action. Further, Rock Island asserts that the alleged violations have been or currently are being addressed by the IEPA.

Judge Gorman disagreed. He found that nothing in either the Clean Water Act or the Memorandum of Agreement limits the United States from bringing this action against Rock Island. Although Magistrate Judge Gorman recognized that there are a limited number of situations where the EPA's authority is limited, see 33 U.S.C. § 1319(g), he found that "the complaint does not allege (and the City does not argue) that either of these circumstances presents itself here." As to Rock Island's arguments that the violations have been or

---

1. This regulation requires that waters of the state "shall be free from sludge or bottom deposits, floating debris, visible oil, odor, plant or algae growth, color or turbidity of other natural origin."

are being addressed and that it violated its "maximum practical flow," Magistrate Judge Gorman found that the arguments relied upon documents and facts that are outside the pleadings and hence inappropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Further, because Plaintiff requested discovery on many of the issues raised by Rock Island and discovery had not yet commenced, Judge Gorman found that it would be premature to covert this part of Rock Island's motion to one of summary judgment.

Rock Island has timely filed its objections to Judge Gorman's Report & Recommendation. Specifically, it raises the following objections: (1) the United States should not be allowed to maintain this action in light of the ongoing enforcement activity of Illinois; (2) Sections 1319 and 1342 of the Clean Water Act in combination with the Memorandum of Agreement preclude this action; (3) public policy requires dismissal; and (4) certain arguments raised in the motion to dismiss rely on documents that the Magistrate can take judicial notice of and were thus properly included as exhibits to the motion to dismiss. Plaintiff has now responded to Defendant's objections. This Order follows.

### LEGAL STANDARD

A district court reviews *de novo* any portion of a magistrate judge's report and recommendation to which written objections have been made. *See* Fed.R.Civ.P. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*

### ANALYSIS

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355

U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gould v. Artisoft, Inc.,* 1 F.3d 544, 548 (7th Cir.1993). Rather, it should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Lanigan v. Village of East Hazel Crest,* 110 F.3d 467 (7th Cir. 1997); *MCM Partners, Inc. v. Andrews– Bartlett & Assoc., Inc.,* 62 F.3d 967, 969 (7th Cir.1995); *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75 (7th Cir.1992).

First, Rock Island contends that because the EPA has delegated authority to administer the Clean Water Act permit program to the State, the EPA cannot maintain this action. It asserts that when the Clean Water Act and the Memorandum of Agreement are taken together, "it becomes abundantly clear that by the terms of the MOA—and not by statute, U.S. EPA agreed to limit its enforcement authority with the IEPA." *See* Def.'s Obj., at 2. Defendant contends that per the Memorandum of Agreement, the EPA agreed it will only bring enforcement actions in those instances where it finds the State has not been timely enforcing violations. Rock Island relies upon a few piecemeal sections in support of their argument, namely:

### II. POLICIES

The State is responsible for the issuance, modification, reissuance, compliance monitoring and enforcement of all NPDES permits in the State, ....

. . . .

In accordance with priorities established in this Agreement and the annual State Program Plan, the State will:

. . . .

(3) Maintain a vigorous enforcement program and take timely and appropriate enforcement action in every case where in the State's opinion such action is warranted.

. . . .

## V. ENFORCEMENT

The State is responsible for taking timely and appropriate enforcement action against persons in compliance schedules, effluent limitations and all other permit conditions for all NPDES permits except for Federal facilities. . . . In instances where the USEPA determines that the State has not initiated timely and appropriate enforcement action against a NPDES Permit violation, USEPA shall proceed with any or all of the enforcement options available under Section 309 of the Act, 33 U.S.C. § 1319.

Def.'s Ex. B., Memorandum of Agreement, at 3–4, 14 (May 12, 1997).

▮ The Court disagrees with Rock Island's interpretation of the Memorandum of Agreement. The language upon which Rock Island relies does not limit the EPA's enforcement authority when it determines action is warranted. Rather, the Agreement merely sets forth the IEPA's responsibilities and the EPA's responsibility to act when the State fails to do so. However, just because the EPA must act when the IEPA fails to does not mean that the EPA cannot use its enforcement authority when it determines that action is warranted. Nothing in the Memorandum of Agreement restricts the EPA's enforcement authority to first finding that the State is not timely enforcing violations.

This conclusion is supported by Section 8 of the Agreement, entitled "Independent Powers." That section provides that "[n]othing in this Agreement shall be construed to limit the authority of the USEPA to take action pursuant to Sections 308, 309, 311, 402, 504, or other Sections of the Act." *Id.* at 20. Thus, the Agreement clearly and expressly reserves the EPA's enforcement authority under the Clean Water Act. Although Rock Island contends that this provision is "boilerplate," it provides no support for this conclusory allegation. The language of the Agreement and specifically that of Section 8 indicates that the Agreement was not meant to limit the EPA's enforcement powers under the Clean Water Act. Further, this reservation of authority is consistent with the reservation of EPA's enforcement authority in the Act itself. *See* 33 U.S.C. § 1342(i).

Additionally, the Clean Water Act also fails to support Defendant's position. Magistrate Judge Gorman was correct in his determination that the sections upon which Rock Island relies "simply does not say what the City would have them say." R & R at 3. Section 1342 which governs the conditions under which States may establish and administer their own NPDES permit programs provides only for the suspension of the issuance of permits by the EPA when a State permit program is approved in order to avoid duplicative federal and state permit programs. Nothing in § 1342 requires the EPA to make any finding with regard to the adequacy of the State's enforcement efforts before initiating federal enforcement. In fact, § 1342(i) states that "[n]othing in this section shall be construed to limit the authority of the Administrator to take action pursuant to section 1319 of this title." Simply put, Defendant's arguments are not supported by either the Memorandum of Agreement or the Act, together or separately.

Defendant also relies upon *Harmon Industries v. Browner*, 191 F.3d 894 (8th Cir.1999) in support of its objections. In that case, the Eighth Circuit, interpreting the statutory scheme under the Resource Conservation and Recovery Act ("RCRA"), held that the EPA cannot overfile an enforcement action for the same alleged violations where a state has taken appropriate action. The decision in *Harmon* was based upon statutory language in RCRA which authorizes States to carry out a hazardous waste program "in lieu of" a federal program and which declares that the State's program shall have the "same force and effect" as action taken by the EPA. *See id.* at 899–900.

However, even assuming *Harmon's* analysis of RCRA is correct,[2] the decision clearly does not apply here. *Harmon* relies heavily upon language in RCRA which does not appear in the Clean Water Act. The Clean Water Act has no "in lieu of" or "same force and effect" language. Rather, the Clean Water Act provides that "Federal Enforcement [is] not Limited" and that nothing in the section authorizing States to have approved permit programs shall limit the enforcement authority of the EPA. *See* 33 U.S.C. § 1342(i). This language is not present in RCRA. *See e.g., United States v. City of Youngstown*, 109 F.Supp.2d 739, 741 (N.D.Ohio 2000) (finding that *Harmon* should not be extended to the Clean Water Act). Accordingly, Rock Island's objection is rejected.

Next, Defendant argues that there are several public policy considerations that require dismissal of this action. First, Defendant contends that if this action is allowed to proceed, it will render the Memorandum of Agreement utterly meaningless and the enforcement mechanisms established by the IEPA moot. This consider-

ation is of course moot given the Court's interpretation of the Act and the Memorandum of Agreement. Second, citing no legal authority to support its argument, Defendant contends that if this case continues it will result in increased litigation with a concomitant increase in the use of scarce judicial resources since the only way to insure closure of alleged violations will be to litigate with the EPA and IEPA. Further, those regulated will no longer be able to rely upon resolutions of violations by dealing solely with the IEPA.

■ However, Defendant failed to raise this policy argument before Magistrate Judge Gorman. Referring motions to magistrate judges is intended to help ease the heavy workloads of the district courts and to aid in the efficient resolution of disputes. *See Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co.*, 747 F.Supp. 1299, 1302–03 (S.D.Ill.1990). Efficiency in judicial administration requires that all arguments be presented to the magistrate judge in the first glance. *See id.* at 1303. The review procedure is not an opportunity for counsel to present new arguments when the ones first tried fail. Accordingly, Defendant's argument is waived. In any event, the Court is not convinced that the dire consequences of which Defendant forecasts will occur. Accordingly, the Court would deny Defendant's objection.

Finally, Defendant objects that certain arguments raised in the motion to dismiss rely on documents that the Magistrate can take judicial notice of and were thus properly included as exhibits to the motion to dismiss. Defendant argues that because the exhibits are public records from Illinois administrative agencies, they are a proper subject of judicial notice and may be considered.

---

**2.** It appears that *Harmon's* statutory interpretation of RCRA has been severely criticized. *See United States v. Power Engineering Co.,* 125 F.Supp.2d 1050 (D.Colo.2000) (attached to Pl.'s Resp. to Def's Mtn. to Dismiss).

In the typical Rule 12(b)(6) motion, the Court merely examines the complaint to determine whether it states a viable claim of relief. If the district court considers matters outside the pleadings, "the motion shall be treated as one for summary judgment," see Fed. R. Civ. Pro. 12(b), although a court may take judicial notice of matters of public record without converting a motion to dismiss into one of summary judgment. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997) (citing cases). Defendant argues because its Exhibits are public records the Court should take judicial notice of them.

However, just because a document is a public record does not mean the Court should take judicial notice of it. Defendant requests that this Court consider more than simply that a decision has been made or that a letter has been written. The Court agrees with Plaintiff that Defendant seeks to offer these documents for the truth of their content. For instance, Defendant's Exhibit E is testimony of certain witnesses at a Pollution Control Board hearing, which Defendant uses to contest Plaintiff's allegation that the maximum flow rate is 12 mgd. For this purpose, the Court finds that judicial notice is improper. *See id.* at 1082 n. 6 ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed."); *Opoka v. I.N.S.*, 94 F.3d 392, 395 (7th Cir.1996) (citing cases).

Defendant's arguments would be better addressed in a motion for summary judgment. As Magistrate Judge Gorman noted, the parties have not yet initiated discovery and considering such arguments at this time would be improper. The Court agrees.

## CONCLUSION

IT IS THEREFORE ORDERED that the Court ADOPTS Magistrate Judge Gorman's Report and Recommendation [Doc. # 13]. Accordingly, Defendant City of Rock Island's Motion to Dismiss [Doc. # 7] is DENIED.