**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sean HOWELL, Defendant–Appellant.**

No. 99–10573.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 2000[1]

Filed Oct. 31, 2000

---

1. Through no fault of his own, Howell's counsel was unable to attend the oral argument. Because Howell's position was fully articulated in his brief and because further argument is not necessary, the motion for additional argument is denied.

John C. Lambrose, Assistant Federal Public Defender's Office, Las Vegas, Nevada, for the defendant-appellant.

Pamela A. Greiman, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

Before: D. W. NELSON, THOMPSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Sean Howell was convicted of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) after a jury trial and was sentenced to 120 months in prison. He appeals his conviction and sentence, arguing that the district court erred by: (1) failing to hold an evidentiary hearing before admitting evidence of Howell's confession; (2) refusing to grant a mistrial after the government failed to inform the defense of material mistakes in the police reports; (3) dismissing a prospective juror after allowing the government, but not the defense, to question the juror on voir dire; (4) admitting evidence of Howell's prior convictions; (5) refusing to instruct the jury on Howell's "mere presence" defense; and (6) failing to adjudicate the constitutionality of his sentence enhancement under 21 U.S.C. § 851(e).

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## I

### Factual Background

On September 29, 1998, Sean Howell ("Howell") and his female travel companion, Quinticca Mosely ("Mosely"), were onboard a Greyhound bus that had stopped at the Las Vegas, Nevada, Greyhound bus depot on its way from Los Angeles to Chicago. Also at the bus depot was an integrated drug task force, comprised of local and federal law enforcement officers. The task force included Detectives Fred McGowan and Julie Butterfield, Sergeant Gino Briscoe, and Officer David Truax, from the Las Vegas Metropolitan Police Department, as well as Agent Chris Cadogan from the Drug Enforcement Administration.

Around 5:30 p.m., Detective McGowan and Sergeant Briscoe boarded the Greyhound bus and began asking the passengers questions. Detective McGowan and Sergeant Briscoe began at the rear of the bus and made their way forward, questioning each passenger. About half-way

through the bus, Detective McGowan initiated contact with Sean Howell and Quinticca Mosely. After some preliminary questions, Detective McGowan noticed that Mosely would not look at him and appeared extremely nervous, and that both Howell and Mosely seemed to be breathing heavily. Detective McGowan asked Howell if he was traveling with any luggage, and Howell responded affirmatively, indicating that his bag was stored underneath the bus in the luggage compartment. Detective McGowan asked if he could search Howell's bag after they finished questioning the other passengers, and Howell consented.

At this point, Sergeant Briscoe observed a black duffel bag in the overhead compartment above where Howell and Mosely were seated. Sergeant Briscoe asked at least four times who owned the bag. Although Mosely owned the bag, neither she nor Howell claimed it. When none of the passengers claimed the bag, Sergeant Briscoe took it off the bus.[2] Waiting outside was Officer Truax along with his drug-sniffing dog, Jet. Jet "alerted on the bag," indicating that it contained drugs. The police opened the bag and discovered approximately two kilograms of cocaine. They also found Mosely's wallet and driver's license.

Armed with this information, Detective McGowan, and Sergeant Briscoe re-entered the bus. Detective McGowan began questioning Mosely, and Sergeant Briscoe made contact with Howell. Sergeant Briscoe informed Howell that they had discovered narcotics in the black duffel bag along with Mosely's license and asked Howell to step off the bus. Howell agreed and walked off the bus with Sergeant Briscoe.

According to Sergeant Briscoe, he advised Howell of his *Miranda* rights immediately after exiting the bus. Howell, however, through his attorney denies that he received *Miranda* warnings at that time.

In any event, Howell told Sergeant Briscoe that he and Mosely received the cocaine in Bellflower, California, and were getting paid a total of $2,000 for transporting the drugs to Chicago.

After hearing this confession, Sergeant Briscoe searched Howell. He found $487 in Howell's clothes and $1,500 hidden under the sole of Howell's left shoe. Around the same time, Detective Julie Butterfield searched Mosely and recovered approximately $30. Mosely and Howell were arrested and charged with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Mosely subsequently struck a deal with the government and agreed to testify against Howell at trial. The jury returned a guilty verdict, and the judge imposed a sentence of 120 months.

Howell appeals his conviction and sentence. His claims are as follows:

1) The district court violated his Fifth Amendment right against self-incrimination by allowing the prosecution to introduce the confession made to Sergeant Briscoe without holding an evidentiary hearing on the matter.

2) The government violated the disclosure rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to inform the defense that two previously disclosed police reports falsely indicated that (1) $487 was taken from Mosely's person, and (2) $1,500 was recovered from Mosely's shoe, when, in fact, $487 was recovered from Howell's person and $1,500 was found in Howell's shoe.

3) The district court violated his Sixth Amendment right to an impartial jury and Federal Rule of Criminal Procedure 24(a) by dismissing a prospective juror after allowing the gov-

---

**2.** Howell does not raise any Fourth Amendment issues with respect to the duffel bag in this case.

ernment, but not the defense, to question the juror.

4) The district court violated Federal Rule of Evidence 404 by allowing the prosecution to introduce evidence of Howell's prior convictions.

5) The district court committed reversible error by refusing to instruct the jury on a "mere presence" defense.

6) The district court committed reversible error by failing to adjudicate the constitutionality of his sentence enhancement under 21 U.S.C. § 851(e).

We address and reject each of Howell's arguments in turn.

## II

### Admission of Howell's Confession

#### A. Background

Before trial, Howell moved to suppress his confession to Sergeant Briscoe and sought an evidentiary hearing. Howell's motion was comprised of boilerplate language. Instead of alleging specific deficiencies in Sergeant Briscoe's *Miranda* admonition, the motion repeatedly stated that "the defense holds the government to its burden of proof to establish adequacy of Miranda warning." The government opposed Howell's motion and challenged the need for such a hearing.

The magistrate judge to whom the motion had been referred declined to hold an evidentiary hearing and recommended that the district court deny Howell's motion to suppress because "[Howell] has failed to make any allegations, which if taken as true, would persuade a court to suppress the confession."

Howell timely objected to the magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1)(C). In his objection, Howell's attorney for the first time offered specific factual allegations regarding the inadequacy of the *Miranda* warnings. He claimed that his client (1) was never properly advised of his *Miranda* rights, (2) did not waive those rights, and (3) that his

confession was coerced. Again, the government opposed Howell's motion for an evidentiary hearing, arguing that Howell "needs to be held accountable for his prior motions."

The district court, pursuant to 28 U.S.C. § 636(b)(1)(C), conducted a *de novo* determination on the issue of the admissibility of Howell's confession. In its review, however, the district court refused to consider Howell's supplemental factual allegations and rejected his request for an evidentiary hearing. Accordingly, based on Howell's initial boilerplate motion, the district court adopted the recommendation of the magistrate judge and denied Howell's motion to suppress his alleged confession.

At trial, Sergeant Briscoe related the substance of Howell's confession to the jury, *i.e.*, that Howell and Mosely had picked up the cocaine in Bellflower, California, and that each was being paid $1,000 to transport the drugs to Chicago, Illinois. Immediately following Sergeant Briscoe's testimony, defense counsel renewed his objection to the district court's decision to allow the government to introduce Howell's confession without holding an evidentiary hearing. The district court overruled the objection.

#### B. Analysis

##### 1. Howell's Initial Motion Before the Magistrate Judge

We review for an abuse of discretion a court's decision whether to conduct an evidentiary hearing on a motion to suppress. *See United States v. Walczak*, 783 F.2d 852, 857 (9th Cir.1986). An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist. *See id.; United States v. Harris*, 914 F.2d 927, 933 (7th Cir.1990); *United States v. Irwin*, 612 F.2d 1182, 1187 n. 14 (9th Cir.1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir.1972). Howell's

initial motion seeking an evidentiary hearing plainly did not meet this standard.

In his motion before the magistrate judge, Howell identified no facts which, if proved, would allow the court to suppress the confession. To justify his request for an evidentiary hearing, Howell submitted a boilerplate motion that relied wholly on the fact that the government has the burden of proof to establish adequate *Miranda* warnings.

Based on Howell's conclusory motion, the magistrate judge did not abuse its discretion in refusing to hold an evidentiary hearing. *See Harris*, 914 F.2d at 933 ("A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required.") (citation omitted).

### 2. Howell's Supplemental Factual Allegations

■ Howell next argues that his specific factual allegations, included for the first time in his objection to the magistrate judge's recommendation, constitute the type of "clearly articulated factual findings" that necessitate an evidentiary hearing.

Title 28 U.S.C. § 636 sets forth the rules for the interaction between United States magistrate judges and United States district court judges. 28 U.S.C. § 636 (2000). District court judges "may ... designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition. . . ." 28 U.S.C. § 636(b)(1)(B). If a party makes written objections to any portion of the magistrate judge's report and recommendation within ten days, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

Howell contends that because a district court "shall make a *de novo* determination" of the magistrate judge's recommendation, the district court here was required to consider his supplemental factual allegations even though he did not present them to the magistrate judge. He is mistaken.

■ We have never directly addressed the issue of whether a district court *must* consider supplemental evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. Other circuits disagree on the answer to the question. The First and Fifth Circuits say that a district court may, but is not required to, consider evidence presented for the first time in a party's objection to the magistrate judge's recommendation. *See Freeman v. County of Bexar*, 142 F.3d 848, 850–53 (5th Cir.1998); *Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir.1988). "We hold categorically that an unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate." *Paterson–Leitch Co.*, 840 F.2d at 990. The Fourth Circuit, in contrast, maintains that a district court must consider any argument or evidence presented on a timely objection to a magistrate judge's recommendation, so long as it could have been raised before the magistrate judge. *United States v. George*, 971 F.2d 1113, 1118 (4th Cir.1992). "The district court cannot artificially limit the scope of its review by resort to ordinary prudential rules, such as waiver, provided that proper objection to the magistrate judge's proposed finding or conclusion has been made and the appellant's right to *de novo* review by the district court thereby established." *Id.*

Like the First and Fifth Circuits, we conclude that a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation. We emphasize, howev-

er, that in making a decision on whether to consider newly offered evidence, the district court must actually exercise its discretion, rather than summarily accepting or denying the motion. The language of the Magistrate Act, its legislative history, Supreme Court precedent, and practical considerations support our conclusion.

Most importantly, the language of the statute grants discretion to a district court. As Howell points out, if a party files timely written objections to a magistrate judge's recommendation, the district court "*shall* make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (emphasis added). In making its *de novo* determination, "[a] judge of the court *may* accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate judge. The judge *may* also receive further evidence or recommit the matter to the magistrate with instructions." *Id.* (emphases added). By utilizing the words "shall" and "may" in consecutive sentences, Congress clearly indicated that district courts are *required* to make a *de novo* determination of the portions of the magistrate judge's report to which a party objects, but that in making that determination the court *may* receive further evidence. *See id.*

The legislative history giving rise to the provision provides more insight:

> The use of the words "*de novo* " determination is not intended to require the judge actually conduct a new hearing on contested issues. Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate. In some specific instances, however, it may be necessary for the judge to modify or reject the findings of the magistrate, to take additional evidence, recall wit-

nesses, or recommit the matter to the magistrate for further proceedings.

H.R.Rep. No. 1609, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.C.C.A.N. at 6163.

Along the same lines, the Supreme Court has suggested that a district court is not required to consider new evidence in reviewing a magistrate judge's recommendation. *See United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate judge's proposed findings and recommendations." *Id.* at 676, 100 S.Ct. 2406; *but see George,* 971 F.2d at 1118 (citing *Raddatz* for the opposite proposition).

Finally, affording district courts discretion to consider new evidence makes prudential sense. The magistrate judge system was designed to alleviate the workload of district courts. *See Paterson–Leitch Co.,* 840 F.2d at 990. To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court. "Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." *Id.* at 991; *see also Anna Ready Mix, Inc. v. N.E. Pierson Const. Co., Inc.,* 747 F.Supp. 1299, 1302 (S.D.Ill.1990). Equally important, requiring the district court to hear evidence not previously presented to the magistrate judge might encourage sandbagging. "[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Paterson–Leitch Co.,* 840 F.2d at 991.

As applied to this case, we note that the district court did exercise its discretion in refusing to consider Howell's supplemental factual allegations presented for the first time in his objection to the magistrate judge's recommendation. The district court addressed Howell's failure to include specific factual allegations in his initial motion:

> The defendant had had the opportunity to put in more specifics regarding the Miranda issue, did not do so, and therefore I upheld the magistrate judge's determination because it was based on the state of the record at that time. *I did not exercise my discretion to allow the record to be supplemented.* (emphasis added).

In so holding, the district court did not abuse its discretion. First, there is no question that the specific factual allegations Howell included in his objection were available to the defense before the magistrate judge's proceedings ever began. Yet, for whatever reason, defense counsel submitted a boilerplate motion which failed to include even a single factual allegation as to the inadequacy of Sergeant Briscoe's *Miranda* admonition to Howell. As the district court observed, "[i]t was only after the Magistrate Judge made his ruling [to deny the evidentiary hearing] that there was an attempt made to flesh out the allegations of lack of *Miranda* warning."

Howell's "excuse" for not including specific factual allegations in his initial motion—"each other Magistrate Judge or District Court Judge in this district, on that same motion, had provided a hearing . . . ."—is wholly unsatisfactory. That other district judges and magistrate judges have previously overlooked defense counsel's boilerplate motion does not excuse the practice of submitting motions devoid of any factual allegations whatsoever. Additionally, because each district judge and magistrate judge has discretion to order an evidentiary hearing based on a motion to suppress, the fact that two judges might view the same motion differently does not

mean either of them erred. Given the pressing need to process litigation efficiently, Howell's "excuse" for failing to include information in his initial motion that was readily available and certainly pertinent to his motion to suppress is patently unacceptable.

Clearly, the district court was cognizant of its discretion to consider Howell's supplemental factual allegations. Because Howell neglected to present any facts to the magistrate judge and failed to adequately explain this deficiency, the district court did not abuse its discretion.

## III

### The Prosecutor's Failure to Inform the Defense of Material Mistakes in Two Police Reports

#### A.  Background

Sometime before trial—possibly two weeks, or possibly the Sunday before the trial began—members of the drug task force discovered the same glaring mistake in the separate reports of Detective McGowan and Agent Cadogan: both reports erroneously indicated that $487 was taken from Mosely's person and $1,500 from her left shoe, when, in fact, the sums were recovered from Howell's person and his left shoe. Both reports had been given to the defense during routine discovery. The government learned of the material errors in the reports before trial. However, the prosecutor did not promptly disclose the mistakes to the defense.

The defense understandably relied on the misidentification in the reports to construct its theory that it was Mosely, not Howell, who was transporting drugs. In his opening statement, Howell's defense counsel advanced this theory and emphasized that no physical evidence was found on Howell, and that all the physical evidence, including nearly $2,000, was found in Mosely's possession. The prosecutor took no steps to correct this error. She remained silent even though she was well

aware of the defense attorney's reliance on the mistakes in the officers' reports.

During the prosecution's case-in-chief, Sergeant Briscoe testified unequivocally that he found the $487 on Howell's person and the $1,500 in the sole of Howell's left shoe. Again, the prosecutor took no steps to reveal the mistakes in the reports. Defense counsel then cross-examined Sergeant Briscoe about the inconsistency between his trial testimony and Detective McGowan's report. Briscoe's explanation was that the reports were wrong. After Sergeant Briscoe was excused, defense counsel moved for a mistrial, claiming that the prosecution failed to turn over exculpatory evidence. The district court denied the request for a mistrial.

Later in the prosecution's case-in-chief, Detective Butterfield testified that she had personally searched Mosely and found only $30 on her person. She also testified that she was present when Sergeant Briscoe removed $1,500 from Howell's shoe. Again, Howell's defense counsel cross-examined the witness about the inconsistency between her trial testimony and the information in the report. Detective Butterfield explained the discrepancy in the reports as a simple "dictation error."

Howell claims that the prosecutor's failure to reveal the error in the reports prior to trial violated his due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny.

## B. Analysis

■ We review a district court's denial of a mistrial based on *Brady* violations *de novo.* *United States v. Zuno-Arce,* 44 F.3d 1420, 1425 (9th Cir.1995).

■ The prosecutor plays a special role in the search for truth in criminal trials. *See Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

Consonant with the special role the American prosecutor plays, the Supreme Court in *Brady v. Maryland* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Since *Brady,* the Court has held that the duty to disclose is applicable even though there has been no request by the accused, *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and that the rule covers information "known only to the police investigators and not the prosecutor." *Kyles v. Whitley,* 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

More recently, the Supreme Court clarified the three elements of a "true" *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either wilfully or inadvertently; and prejudice must have ensued." *Strickler,* 527 U.S. at 281–82, 119 S.Ct. 1936.

The government admits that it learned of the mistake in the police reports before trial and did not reveal the error to the defense. Nevertheless, the government argues that Howell is not entitled to a mistrial for three reasons: (1) because Howell knew that the money was actually recovered from him, the government was under no obligation to disclose the infor-

mation to the defense; (2) the correct information was inculpatory in that it suggested that Howell committed the offense, and therefore the government was under no duty to disclose the information to the defense; and (3) even if the mistakes in the reports should have been disclosed, Howell was not sufficiently prejudiced to warrant a mistrial. We conclude that the government's first two arguments are baseless, but that the third has merit, and therefore will not disturb his conviction.

The government's contention that it had no duty to disclose the mistake to the defense because Howell knew the truth and could have informed his counsel is wrong. The availability of particular statements through the defendant himself does not negate the government's duty to disclose. *See United States v. McElroy,* 697 F.2d 459, 465 (2d Cir.1982). Defendants often mistrust their counsel, and even defendants who cooperate with counsel cannot always remember all of the relevant facts or realize the legal importance of certain occurrences. *See id.* Consequently, "[d]efense counsel is entitled to plan his trial strategy on the basis of full disclosure by the government regardless of the defendant's knowledge or memory of the disclosed statements." *Id.*

The government's characterization of the information withheld as exclusively inculpatory, not exculpatory, is flatly contradicted by Supreme Court precedent. In fact, it was both. In *Kyles v. Whitley,* the Court explained that information which might "have raised opportunities to attack ... the thoroughness and even good faith of the investigation ..." constitutes exculpatory, material evidence. 514 U.S. at 443, 115 S.Ct. 1555; *see also Bowen v. Maynard,* 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant and we may consider such evidence in assessing a possible *Brady* violation."). "When, for example, the probative force of evidence depends on the circum-

stances in which it was obtained and those circumstances raise the possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will diminish it." *Kyles,* 514 U.S. at 446 n. 15, 115 S.Ct. 1555.

In this case, the fact that not one, but two separate police reports contained an identical error as to a critical piece of evidence certainly raises the opportunity to attack the thoroughness, and even good faith, of the investigation. *See id.* at 446, 115 S.Ct. 1555. That the information withheld may seem inculpatory on its face in no way eliminates or diminishes the government's duty to disclose evidence of a flawed police investigation. *See id.* Furthermore, the mistakes constituted textbook examples of impeachment evidence as to where the officers found the money. Remarkably, the government, in its brief, recognizes the value to the defense of these mistakes, stating:

> The transposition of the co-defendant's names was a mistake by the officers. However, the only party hurt by this was the prosecution as it made the Government's agents and case appear to be haphazard and inconsistent as well as prone to errors. The mistake hurt the credibility of the Government's witnesses.

Moreover, the government's practice in this case of knowingly allowing the defense to discover mistakes in police reports for the first time on cross-examination is incompatible with Rule 16 of the Federal Rules of Criminal Procedure. To quote the Advisory Committee's notes to Rule 16:

> [B]road discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence.

Fed.R.Crim.P. 16 Advisory Committee's Note. One of the objectives of Rule 16 is to eliminate the idea that a criminal trial is a sporting contest in which the game of cat and mouse is acceptable. When a prosecutor discovers material mistakes in police reports already turned over to the defense, the prosecutor must take appropriate steps promptly to notify the defense of the mistakes. This responsibility is part and parcel of Rule 16(c), which imposes upon the government a continuing duty to disclose.[3] Fed.R.Crim.P. 16(c).

■ The government's final assertion—that Howell has not demonstrated sufficient prejudice to warrant a mistrial—has merit. "[N]ot every violation of [the duty to disclose] necessarily establishes that the outcome was unjust." *Strickler,* 527 U.S. at 281, 119 S.Ct. 1936. "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.*

Howell cannot satisfy the prejudice standard. To begin, the government presented substantial evidence independent of the location of the money to support the guilty verdict. Most significantly, through the testimony of Sergeant Briscoe, the government introduced Howell's confession:

Q. (Prosecutor to Sergeant Briscoe) And did you ask him any questions regarding the suspected cocaine that was in the Guess bag?

A. (Sergeant Briscoe) Yes, I did.

Q. And what did he say?

A. He said he was getting paid a thousand dollars ($1,000) to transport it.

. . .

Q. Did he indicate where he got the cocaine from?

A. Yes. He said he flew from Indiana down to Bellflower, and checked into a Days Inn at—in Los Angeles

and that it was hooked up for him, and that's where he received the narcotics.

. . .

Q. Did he tell you where he was taking the cocaine?

A. Back to—or to Chicago.

The government corroborated Howell's confession with the detailed testimony of Quinticca Mosely. Mosely testified that Howell placed the cocaine in her bag and discussed the fact that they were to be paid $1,000 each for transporting the drugs to Chicago.

Additionally, Howell's defense counsel effectively cross-examined the officers about the inconsistencies between their trial testimony and the information in the reports. For example, the defense's cross-examination of Detective Butterfield, in part, went like this:

Q. (Defense Counsel to Detective Butterfield) You were present [when the money was taken from Howell]. Okay. So did you go back to Detective McGowan and say, geez, this is kind of important where the money is found, let's correct the report?

A. (Detective Butterfield) I didn't even review this report until probably two weeks ago prior to—

Q. Okay. With respect to [Detective McGowan's report]—you received it two weeks ago?

A. Approximately two weeks ago, yeah.

Q. Okay. Did you tell anybody about the fact that the report was simply dead wrong, based on your memory?

A. No, I don't believe it was—nobody inquired or asked. I figured they had already caught the mistake.

Q. I see. So nobody said anything to anybody else?

A. I don't know.

---

**3.** We do note, however, that the prosecutor in this case candidly acknowledged her mistakes at oral argument. We have no reason to misbelieve her explanation that she saw this evidence at the time as exclusively inculpatory and therefore outside the scope of *Brady*.

■ The record demonstrates that the defense was able to effectively cross-examine the witnesses about the inconsistency between their trial testimony and the non-disclosed evidence, and that the prosecution introduced significant evidence independent of the evidence withheld by the government, including the confession of the defendant. Under these circumstances, we conclude there is no reasonable probability that the suppressed evidence would have produced a different verdict. *See Coleman v. Calderon,* 210 F.3d 1047, 1053 (9th Cir.2000) ("At trial, the defense effectively blunted the force of [the nondisclosed] evidence, and the government's previous concealment of it did not render Coleman's trial fundamentally unfair."). As Howell has not demonstrated sufficient prejudice, the district court did not err in denying his motions for a mistrial.[4]

Our ultimate conclusion, however, in no way condones the actions of the prosecutor in this case. As was said in *Kyles,* holding prosecutors responsible for their actions

> means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative ... of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done. And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations."

514 U.S. at 439, 115 S.Ct. 1555 (citations omitted).

4. Howell argues on appeal, for the first time in this case, that had he received the correct information as to where the money was found, he would have made a motion to suppress it under the Fourth Amendment. However, he did not make such a motion in the

## IV

### Dismissal of Prospective Juror

#### A. Background

During voir dire of the jury, the district court asked a potential juror if any of his immediate family members or close friends had ever been charged with a criminal offense. The potential juror responded that an uncle and a cousin were currently incarcerated. The district court then invited the prosecutor to ask supplemental questions. In the ensuing exchange between the potential juror, the prosecutor, and the court, the juror admitted that he would be unable to weigh equally the testimony of a police officer and the testimony of a civilian. Based on the potential juror's candid admission, the district court excused him. Howell's counsel requested to ask the potential juror questions, but the district court refused.

Howell contends that the district court erred in excusing the prospective juror because: (1) the juror's statements did not justify his removal for cause; and (2) once the court allowed the government to question the potential juror, it should have afforded Howell a similar opportunity to ask questions.

#### B. Analysis

■ We review a district court's actions during the voir dire process for an abuse of discretion. *See United States v. Milner,* 962 F.2d 908, 911 (9th Cir.1992).

■ The function of the voir dire is to ferret out prejudices in the venire that threaten the defendant's Sixth Amendment right to a fair and impartial jury. *See Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). Federal Rule of Criminal Procedure 24(a) furthers this purpose by permitting a trial

trial court, and the record therefore is insufficient to show prejudice in connection with the *Brady* claim. Notwithstanding the late discovery of the truth, Howell could have made such a motion at that time, but he did not. Hence, no actual prejudice occurred.

judge to conduct an examination of prospective jurors, during which "the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper...." Fed.R.Crim.P. 24(a). Whether to allow supplemental questions proposed by counsel is within the "sound judicial discretion" of the district court. *United States v. Baldwin*, 607 F.2d 1295, 1297 (9th Cir.1979). The district court did not violate this standard.

■ Howell's contention that the potential juror's answers did not justify removal for cause is untenable. The trial judge's obligation to "excuse a prospective juror if actual bias is discovered," *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977), not only supported the district court's decision to excuse the potential juror, but necessitated it.

■ Similarly, Howell's argument that the district court violated Federal Rule of Criminal Procedure 24(a) by allowing the government, but not the defense, to question the potential juror is without merit. No case law supports his claim. Moreover, despite the fact that under Federal Rule of Criminal Procedure 24(a) the district court may permit the "defendant's attorney and the attorney for the government" to supplement the voir dire, nothing suggests that the rule was intended to require judges to permit unnecessary questioning once a prospective juror admits partiality. In fact, such a requirement would be superfluous in light of the fact that the purpose of voir dire is to remove partial jurors. The district court did not err in refusing Howell's request to "ameliorate" the potential juror's answers after he admitted he was unable to be impartial.

## V

### Admitting Evidence of Howell's Prior Convictions

■ The district court, over the objection of the defense, allowed the govern-

ment to introduce evidence of Howell's 1992 conviction for possession of cocaine and his 1998 conviction for possession with intent to deliver cocaine. Howell contends that the district court erred in admitting the prior convictions. He is wrong.

■ We review a district court's decision to admit evidence under Fed.R.Evid. 404(b) for an abuse of discretion. *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir.1990). "Evidence of prior crimes, acts, or wrongs is not admissible to prove the character of the accused in order to show action in conformity therewith." Fed. R.Evid. 404(b). However, evidence of prior crimes, acts, or wrongs, offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accidence is admissible. *Id.*

■ For prior convictions to be admissible under Fed.R.Evid. 404(b), they must: (1) be relevant to a material element of the offense; (2) be similar to the charged conduct; (3) be based on sufficient evidence; and (4) not be too remote in time. *Houser*, 929 F.2d at 1373.

Howell's prior convictions are relevant because they tend to show knowledge, a material element of possession with intent to distribute cocaine. 21 U.S.C. § 841(a)(1). The prior convictions for possession of cocaine and possession with intent to deliver cocaine tend to show that Howell knew that the substance in the bag was a narcotic. Additionally, Howell's defense at trial was that it was Mosely who was transporting the cocaine. Howell claimed to be "merely present." "At the very least, the prior conviction was admissible to rebut [Howell's] claimed innocent motives for his presence [on the bus]." *United States v. Sager*, 227 F.3d 1138, 1148 (9th Cir.2000).

Howell's prior convictions are similar to the instant offense. Both prior convictions involved possession of narcotics and cocaine specifically. The fact that Howell

was convicted is sufficient proof that he committed the prior acts. *See United States v. Arambula–Ruiz,* 987 F.2d 599, 602 (9th Cir.1993).

Finally, Howell's 1998 conviction, entered only months before he was arrested in this case, is not too remote. Also, because the 1992 conviction concerned the same offense as the 1998 conviction and the current charge, we conclude that the district court did not err in finding that the 1992 conviction was not too remote in time.

To the extent Howell's claim rests on Federal Rule of Evidence 403, it is also baseless. We have held that a district court that balances probity and prejudice and provides a limiting instruction did not abuse its discretion. *Arambula–Ruiz,* 987 F.2d at 604. The district court did both here, and therefore did not abuse its discretion.

## VI

### Mere Presence Instruction

Howell argues that the district court's denial of his request for a jury instruction regarding the "mere presence" defense constitutes reversible error.

We review "whether the district court's instructions adequately presented the defendant's theory of the case *de novo." United States v. Dixon,* 201 F.3d 1223, 1230 (9th Cir.2000). In this case, the district court correctly refused to issue a "mere presence" instruction to the jury.

A district court may properly refuse to give a "mere presence" instruction when the government's case rests on "more than just a defendant's presence, and the jury is properly instructed on all elements of the crime...." *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1282 (9th Cir.1992). Because the district court properly instructed the jury on the elements of possession with intent to distribute, our inquiry is limited to whether the government's case against Howell rested on more than his "mere presence."

We conclude that the government presented ample evidence that Howell was an active participant in the crime; *i.e.,* that he was more than "merely present." Specifically, Mosely testified that Howell placed the cocaine in her bag, instructed her to carry it, and promised her $1,000 for her role in its delivery. Furthermore, Howell confessed that he picked up the cocaine in Bellflower, California and that he and Mosely were to split $2,000 for transporting the drugs to Chicago. The district court's refusal to give a "mere presence" instruction was correct.

## VII

### Constitutionality of Sentence Enhancement Under 21 U.S.C. § 851(e)

We have squarely rejected Howell's contention that his sentence enhancement under 21 U.S.C. § 851(e) is unconstitutional. *See United States v. Davis,* 36 F.3d 1424, 1437–38 (9th Cir.1994) (rejecting challenge to § 851(e) in light of *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994)).

## VIII

### Conclusion

For the reasons expressed above, we AFFIRM Sean Howell's conviction for possession with intent to distribute and his 120 month sentence.

AFFIRMED.