**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-30247 |
| Plaintiff - Appellant, | D.C. No. 3:10-cr-00124-JWS-DMS-1 |
| v. | |
| SIMON D. SMITH, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted August 28, 2012
Anchorage, Alaska

Before: HAWKINS, McKEOWN, and BEA, Circuit Judges.

Simon Smith ("Smith") was in custody, under indictment for state drug and
firearms crimes, and represented by counsel, when state agents placed a confidential
informant ("CI") and a recording device in his cell in an attempt to gather information
about a missing person. The placement of the recording device was done with FBI

---

[*] This disposition is not appropriate for publication and is not precedent except
as provided by 9th Cir. R. 36-3.

assistance and pursuant to an authorizing warrant, but also done despite a warning delivered to the state police from his counsel that Smith was not to be questioned without his counsel present. Over 400 hours of conversation were recorded. Subsequently, the State dropped its charges and turned the case over to the federal authorities who proceeded to indict Smith on federal drug and firearms crimes arising out of the same events that had led to the state charges.

When the government announced its intention to use excerpts from the recorded conversations at trial, Smith moved to suppress the recorded statements as violations of his Sixth Amendment right to counsel. Following a lengthy hearing, a magistrate judge recommended allowing admission of statements made outside the presence of the CI, but suppression of those statements made in the CI's presence, finding Sixth Amendment violations.[1] The district court, adopting the magistrate judge's Report and Recommendation ("R&R") in full, ordered suppression. This timely government

---

[1] It is well-settled law that once a defendant's Sixth Amendment right to counsel attaches, the government is forbidden from "deliberately eliciting" incriminating statements about the crimes charged from the defendant. *Massiah v. United States*, 377 U.S. 201, 206 (1964). These Sixth Amendment protections apply to conversations between CIs and defendants where the CIs relay incriminating statements from the defendant to the government, just as they do to formal questioning. *United States v. Henry*, 447 U.S. 264, 274 (1980). The Ninth Circuit has implemented *Henry* through a two-part test. *See Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004).

appeal followed. *See* 18 U.S.C. § 3731.  We affirm in part, reverse in part, and vacate and remand in part.

**I.  Waiver**

Ordinarily we would begin by discerning whether the crimes for which Smith is indicted by the federal government are the "same offense" as the crimes for which he was indicted by the State of Alaska during the time he was housed with the CI because Sixth Amendment protections are "offense specific . . . [and] cannot be invoked once for all future prosecutions." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  Sixth Amendment protections attach only to those offenses with which a defendant is charged, not all other past and potential criminal conduct.

The government argues the federal crimes for which Smith is currently indicted are distinct from the state crimes for which he was indicted and represented at the time of the recordings because: (1) the charges were brought by different sovereigns, and (2) under *Texas v. Cobb*, 532 U.S. 162 (2001), which expanded *Blockburger v. United States*, 284 U.S. 299 (1932), the crimes charged were different because each of the state charges required at least one element that each of the federal charges did not, and vice versa.

The government, however, did not raise these arguments until its objection to the magistrate judge's initial R&R.  A district court judge may, but is not required to,

consider evidence and claims presented for the first time in a party's objection to a magistrate judge's R&R. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).

Here, the district court noted that the government had raised new objections, but agreed with Smith that these newly raised claims had been forfeited[2] and that the delay in raising these claims produced prejudice. Thus the district court incorporated by reference Smith's rationale for why these new arguments had been waived.[3] We deem this a sufficient "actual exercise" of the district court's discretion and similarly decline to consider these arguments.

---

[2] We note that Smith's Response contained a more explicit forfeiture argument as to one of the government's new claims than as to the other. However, his general explanation as to how the government's delay prejudiced his case pertained to both of the government's new arguments, and constituted a sound reason for deeming both arguments forfeited.

[3] We also note, as the government conceded at oral argument, that there is no excuse for the government's delay in raising these arguments. They had been available to the government throughout the entirety of the proceedings before the magistrate judge. *See Howell*, 231 F.3d at 623. Moreover, here, as in *Howell*, the party who failed to raise arguments in a timely fashion is not a party to whom we feel especially compelled to grant the benefit of the doubt—someone who like a pro se petitioner is bereft of legal guidance and litigation experience. Rather, it is the federal government. As we have stated before: "As an officer of the court, the prosecutor has a heavy responsibility both to the court and to the defendant to conduct a fair trial . . . ." *United States v. Escalante*, 637 F.2d 1197, 1203 (9th Cir.1980).

Because we deem the government's "separate offenses" arguments forfeited, we proceed to review the suppression order under the more stringent plain error standard. *See* Fed. R. Crim. P. 52(b); *United States v. Karterman*, 60 F.3d 576, 579 (9th Cir.1995); *United States v. Cruz*, 554 F.3d 840, 845 (9th Cir. 2009) (discussing plain-error review).

## II. Suppression Order

In *Randolph v. California*, 380 F.3d 1133, 1144 (9th Cir. 2004), we laid out the test for determining whether an individual acting as a CI violates a defendant's Sixth Amendment right to counsel, putting into effect the "deliberate elicitation" language from the Supreme Court's *Massiah* and *Henry* decisions. This test requires a showing that (1) the CI was acting as an agent of the State when he obtained the information from him, and that (2) the CI made "some effort to 'stimulate conversations about the crime charged.'" *See Randolph*, 380 F.3d at 1144 (quoting *Henry*, 447 U.S. at 271 n. 9). As we explained in *Randolph*, "'stimulation' of conversation falls far short of 'interrogation.'" *Id*. (quoting *Fellers v. United States*, 540 U.S. 519, 522–25 (2004)).

Although the CI need not formally interrogate the defendant to violate his rights, the Supreme Court in *Kuhlmann v. Wilson*, 477 U.S. 436, 456 (1986), held that where an informant is placed in close proximity to the defendant, but makes no effort

5

to stimulate conversations <u>about the crime charged</u>, there is no violation of the defendant's Sixth Amendment rights:

> [A] defendant does not make out a violation of [his Sixth Amendment] right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

*Id*. at 459. The Court concluded the defendant's Sixth Amendment rights were not violated because the informant had not "deliberately elicited" any conversation based on the trial court's findings that the statements made by the defendant were "unsolicited" and "spontaneous" and that the informant had "at no time asked any questions with respect to the crime." *Id*. at 440, 459.

The parties do not dispute that the CI was a government agent, so we look here only at whether the magistrate judge and district court properly applied the "deliberate elicitation" test. We review the district court's ruling on the motion to suppress de novo. *See United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006).

The government initially proposed to use all 400 hours of recordings at trial, but after Smith's motion to suppress, reduced its proposed offer to eighteen separate excerpts of the recordings. The magistrate judge recommended that all statements Smith made in the CI's presence be suppressed—both those that the submitted

6

transcript made clear were directly elicited by the CI, and those that the submitted transcript made clear that only the CI was present. The magistrate judge characterized the first category of these statements as "deliberately elicited" and the second category of these statements as made in "an intentionally created situation that was likely to induce the defendant to make incriminating statements."

With regard to the first category of statements, those conversations numbered 5, 6, 9, 10, 11, and 12 in the record, the correct "deliberate elicitation" test prescribed by *Randolph* was properly applied. However, we conclude that as to conversations 6, 9, and 10, the CI did not "stimulate conversation about the *crime[s] charged*," but rather about other subjects. *Randolph*, 380 F.3d at 1144 (emphasis added); *see also Kuhlmann*, 477 U.S. at 456. Although the CI did elicit statements from Smith in each of these conversations, he did not elicit information about the pending state charges. Instead, he elicited statements about the missing girl. Thus, Smith's Sixth Amendment rights were not violated. We therefore reverse the district court's suppression order as to conversations 6, 9, and 10.

We vacate and remand the suppression order as to the second category of statements, those conversations numbered 1, 2, 3, 4, 7, 8, 13, 14, and 18 in the record. The magistrate judge concluded these were obtained through "an intentionally created situation that was likely to induce the defendant to make incriminating statements."

While the circumstances under which a statement are made are relevant in determining whether a statement has been "deliberately elicited," the magistrate judge's simplified test does not incorporate the *Randolph* and *Kuhlmann* tests or account for the requirement that the CI have elicited conversation about the charged crimes.[4]

**AFFIRMED in part, REVERSED in part, and VACATED and REMANDED in part.**

---

[4] The record would have been more complete, and the magistrate judge's analysis easier, were more of the transcript of the discussions preceding the statements the government sought to admit provided. Without sufficient transcript indicating the context in which the statements were made, the "deliberate elicitation" test is more difficult to implement and the risk of analytic inaccuracy is greater.